UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KEOLIS TRANSIT AMERICA INC., | Case No. 2:22-cv-00710-RFB-EJY |
| Plaintiff, | **ORDER** |
| v. | |
| TEAMSTERS UNION, LOCAL 533, | |
| Defendant. | |

### I.  INTRODUCTION

Before the Court are two motions and one cross-motion: Plaintiff Keolis Transit America ("Keolis"), Inc.'s Notice and Motion to Vacate Arbitration Award (ECF No. 1) and Defendant Teamsters Union, Local 533, Motion to Dismiss and Cross Motion to Confirm Arbitration Award by Defendant Teamsters Union, Local 533 ("the Union" or "Teamsters").  For the reasons stated below, the Court denies Keolis' Motion and grants the Union's cross-motion.

### II.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Keolis commenced this case by filing its Notice and Motion to Vacate Arbitration Award on May 3, 2022. ECF No. 1.  Teamsters filed a pre-answer Motion to Dismiss on June 1, 2022. ECF No. 12.  Keolis filed its Response to the Motion on June 13, 2022. ECF No. 13.  Teamsters filed its Reply in support of its Motion on June 17, 2022.  ECF No. 14.  On July 20, 2022, the Court directed the parties to file a proposed discovery plan and scheduling order no later than August 3, 2022.  ECF No. 15. The parties filed a proposed joint discovery plan and scheduling order on July 27, 2022, which the Court granted the same day.  ECF Nos. 16, 17. The Court set a hearing for the pending motions on January 27, 2023.  ECF No. 18.

### III. FACTUAL ALLEGATIONS

Keolis alleges the following facts in its Notice and Motion (ECF No. 1):

Keolis is a transportation company that operates public transportation bus routes around the world, including in Nevada. Michael Rowan is a former Keolis bus driver. In Reno, where Rowan was based, Keolis operates buses pursuant to a contract with the Regional Transit Commission of Washoe County, Nevada ("RTC"). The parties are bound to a collective bargaining agreement ("the CBA"). The CBA requires disputes involving the CBA to be submitted to binding arbitration.

Rowan was terminated from Keolis because he engaged in unsafe behavior while operating a vehicle in violation of the CBA and Keolis policies. Specifically, Rowan was seen on surveillance video on June 1, 2020 watching a loud video on his cell phone on two separate occasions for several minutes at a time, while passengers were boarding and exiting the bus. Rowan played the videos so loudly that a customer complained on or about June 1, 2020.

In response to the customer complaint, Keolis investigated and confirmed via video surveillance that Rowan's conduct violated the following policies: CBA Section 9.6 (no use of cell phone while operating vehicle); Company Rule 4 (no use of cell phone while in the seat of any company vehicle), and provisions of the Keolis Handbook prohibiting the use of cell phones where use or distraction with use could create a safety risk to an employee or others. After reviewing the passenger complaint and observing Rowan's safety violations, Keolis terminated Rowan's employment on June 19, 2020. The Union filed a grievance on June 24, 2020 alleging Rowan was wrongfully discharged.

An arbitration hearing was held on June 15, 2021 in Reno Nevada before Arbitrator Robert B. Hirsch. During the hearing, Keolis testified that there had never been an instance where a driver was observed using a cellphone while operating a company vehicle and had NOT been terminated. At the conclusion of the hearing, the parties filed post hearing briefs. On August 27, 2021, the Arbitrator issued the award.

The Arbitrator mistakenly found that Keolis failed to rely upon the policy contained in the handbook even though the termination form clearly states Rowan violated " Keolis [] handbook

2

policies….and policies posted" even though Rowan violated both the handbook policies and the posted Work Rule 4. The arbitrator found that work rule 4 violated the CBA. Section 9.3 of the CBA allows the Union to grieve Keolis work rules and failure to do so within 14 days of implementation means the rule stands implemented. This rule should be deemed to stand as implemented. Furthermore, the Arbitrator found that Work Rule 4 was unreasonable because operating a bus and sitting in a driver's seat are two different things. The Arbitrator found that operating a vehicle is not the same as sitting in the driver's seat with the vehicle idling. Based on these conclusions, The Arbitrator first found that Rowan did violate Keolis' Personal Electronic Devices policy that prohibits the use of cell phone where the "use or distraction with use could create a safety risk to an employee or others." The Arbitrator also found that "Rowan used his cell phone to watch videos while he sat in the driver's seat of his vehicle with passengers on board." The Arbitrator then found that "[i]t was clear from the video introduced into evidence that he was focused solely on his phone and oblivious to the passengers who were in his custody and care" and "Rowan was not mindful of his responsibilities – care for the transit passengers – while he watched his phone,"

Even after making these findings, the Arbitrator only imposed a two (2) week suspension for the clear violation rather than use it to sustain termination. The Arbitrator concluded that found that: (a) Keolis' decision to discharge Rowan violated the just cause doctrine; (b) Rowan was to be reinstated and any reference to his discharge be expunged from Keolis' personnel records; and (c) Rowan was to be made whole for lost wages and benefits he would have earned, less two weeks' wages and benefits, and less any monies earned during time away from employment with Keolis.

The Arbitration Award did not fix a total amount of backpay but merely provided that two weeks should be deducted from the unspecified backpay awarded. Keolis reinstated Rowan on September 1, 2021, but requested evidence of mitigation before backpay could be calculated. On October 7, 2021, the Arbitrator ordered in an email that Rowan provide only a statement under penalty of perjury confirming his earnings from his date of termination of employment with Keolis. In this email, the Arbitrator requested only that Rowan account for his efforts to find other

employment and list unemployment benefits received. The email stated that "No other data or documents are to be included" and "No other information is to be requested by the Employer." Rowan submitted a two-page statement that simply itemized his purported interim earnings and stated without explanation that he applied for but received no unemployment benefits.

Rowan's statement on backpay provided no explanation as to why he did not receive unemployment benefits, and what, if any actions he took to obtain employment during his 6-month, 3-week period of unemployment. On January 5, 2022, Keolis requested an evidentiary backpay hearing. Arbitrator Hirsch subsequently scheduled what Keolis understood was to be a joint status conference ("Conference") with counsel for the Union. All hearing requests were denied. Rowan represented, by counsel, that he would seek 66 full weeks of backpay. There are, however, only 62 weeks and 4 days between June 20, 2020 (date of Rowan's firing) and September 1, 2021 (date of Rowan's reinstatement). The Arbitrator was made aware of this on January 8, 2022. On February 2, 2022, the Arbitrator ordered Keolis to pay Rowan backpay and benefits for 66 weeks. The Arbitrator worked at the Union's law firm for eleven years and was biased against Keolis.

### IV. LEGAL STANDARD

#### a. Motion to Vacate Arbitration Award

Recently, the Supreme Court clarified that Courts reviewing petitions to vacate or confirm arbitration awards may not "look through" to the underlying controversy to find subject matter jurisdiction over the dispute. Badgerow v. Walters, 142 S. Ct. 1310, 1314 (2022). After Badgerow, "a court may look only to the application actually submitted to it in assessing its jurisdiction." Id. Therefore, a federal court has subject-matter jurisdiction only if the "face of the application [to confirm or vacate]. . . shows that the contending parties are citizens of different States (with over $75,000 in dispute) . . . [o]r if it alleges that federal law (beyond Section 9 or 10 [of the Federal Arbitration Act]) entitles the applicant to relief." Id. at 1316.

Pursuant to the Federal Arbitration Act, 9 U.S.C.S. § 1 et seq., a federal court may vacate an arbitration award: (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators; (3) where the arbitrators were

guilty of misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C.S. § 10; see also Coutee v. Barington Capital Group, L.P., 336 F.3d 1128, 1132 (9th Cir. 2003) (finding the court's review of an arbitration decision is "limited and highly deferential.") (internal citation omitted). The petitioner cannot show evident partiality, pursuant to 9 U.S.C. § 10(a)(2), if an arbitrator merely fails to disclose facts "relating to long past, attenuated, or insubstantial connections between a party and an arbitrator." In re Sussex, 776 F.3d 1092, 1094 (9th Cir. 2015). Arbitrators exceed their powers when the given award "'evidences a manifest disregard for law.'" A.G.Edwards & Sons, Inc. v. McCollough, 967 F.2d 1401, 1403 (9th Cir. 1992). However, "manifest disregard for the law means something more than just an error in the law[.]" Luong v. Circuit City Stores, Inc., 368 F.3d 1109, 1112 (9th Cir. 2004). Mere ambiguity in the arbitrator's opinion is likewise insufficient for a finding of manifest disregard. Sheet Metal Workers Int'l Ass'n, Local No. 359, AFL-CIO v. Ariz. Mech. & Stainless, Inc., 863 F.2d 647, 653 (9th Cir. 1988). The reviewing court also cannot second-guess the weight the arbitrator assigns to conflicting evidence in resolving disputes. Coutee v. Barington Capital Group, L.P., 336 F.3d 1128, 1134 (9th Cir. 2003).

### b. Motion to Dismiss

An initial pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Sec. Services, Inc., 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must do more than assert "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . . ." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, a claim will not be dismissed if it contains

"sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Id. at 678 (internal quotation and citation omitted). The Ninth Circuit, in elaborating on the pleading standard described in Twombly and Iqbal, has held that for a complaint to survive dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

## V.   DISCUSSION

The Court finds that there is an initial question of subject matter jurisdiction that the parties have not briefed. The Court finds that Keolis has not adequately plead facts supporting an independent basis for subject matter jurisdiction in this case. First, while there is complete diversity, the amount in controversy is less than $75,000.00. The award, which Keolis argues is too high, is $64,765.36. This is the only amount in controversy mentioned in the Petition. Under Badgerow, Plaintiff would need an independent basis, under federal question jurisdiction, to bring this case. The only federal statute—outside of the FAA—pursuant to which Keolis brings the instant case is Section 301 of the Labor Management Relations Act ("LMRA").

As the Court understands the relationship between these two statutes, the Court may analyze the validity of the Arbitration award under either, but not both. This is evidenced by the fact that there are different (albeit only slightly different) standards of review under each of the two federal statutes. Pursuant to the LMRA, a court may vacate an arbitration award (1) when the award does not draw its essence from the collective bargaining agreement and the arbitrator is dispensing his own brand of industrial justice; (2) where the arbitrator exceeds the boundaries of the issues submitted to him; (3) when the award is contrary to public policy, or (4) the award is procured by fraud. See Southwest Reg'l Council of Carpenters v. Drywall Dynamics, Inc., 823 F.3d 524, 530 (9th Cir. 2016), cert. denied, 580 U.S. 1099, 137 S. Ct. 829, 197 L. Ed. 2d 68 (2017) (internal citation and quotation marks omitted). Pursuant to the FAA, any party may apply to the Court to confirm, vacate, modify, or correct an arbitration award. 9 U.S.C. § 9. A court may

vacate an arbitration award, pursuant to the FAA, (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators; (3) where the arbitrators were guilty of misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C.S. § 10; see also Coutee v. Barington Capital Group, L.P., 336 F.3d 1128, 1132 (9th Cir. 2003).

The Union addressed the different standards of review in its argument on its motion, but Keolis has not responded. The Union's position is that the Ninth Circuit applies the FAA to labor arbitration disputes. Keolis brings its Petition pursuant to both statutes but does not explain, in its response to the Union's motion, why (or whether) the LMRA, rather than the FAA, should govern the Court's review of the case. Nevertheless, the choice between the relevant legal standards is not outcome determinative here for two reasons. First, even if this Court strictly applies Section 301, it may look to the FAA for guidance. See Int'l Alliance of Theatrical Stage Emple. v. Insync Show Prods., Inc., 801 F.3d 1033, 1039 (9th Cir. 2015) (noting that federal courts often look to the FAA for guidance in labor arbitration cases especially since § 301 empowers federal courts to craft federal common law in applying and interpreting the LMRA) (citing United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 41 n.9 (1987) (internal quotation marks omitted)).

Second, the Court is required, under both the FAA and Section 301, to defer to arbitration awards. Sheet Metal Workers' Int'l Assn. Loc. Union No. 359 v. Madison Indus., Inc. of Ariz., 84 F.3d 1186, 1190 (9th Cir. 1996) (judicial review of arbitration awards under the LMRA is "both limited and highly deferential"); Aspic Eng'g and Constr. Co. v. EEC Centcom Constructors LLC, 913 F.3d 1162, 1166 (9th Cir. 2019) (finding the same under the FAA).

A. Statute of Limitations

The Union argues that Keolis' motion is time barred because Keolis waited longer than three months after the award was filed or delivered to commence the case. There are two arbitration awards in this case. The first was issued on August 27, 2021. Keolis had 3 months (i.e. until November 27, 2021) to challenge the award. It failed to do so. The Arbitrator issued a second award on February 2, 2022. Keolis filed its federal court petition on May 3, 2022, but failed to

effectuate service on that date. Because service was not effectuated on the Union until May 9, 2022, Keolis waived its challenge to the second award. Keolis counters that service was perfected in time, and that the statute of limitations does not run until the Arbitrator determined the amount of backpay (February 2, 2022).

The Court agrees with Keolis that the case was not ripe for federal court review until Arbitrator Hirsh established a final backpay determination in the February 2, 2022 Order. See, e.g., Millmen Local 550, Un. Broth. Of Carpenters & Joiners of Am., AFL-CIO v. Wells Exterior Trim, 828 F.2d 1373, 1375 (9th Cir. 1987) (finding that under Section 301 of the LMRA an arbitration decision is not final and binding where the arbitrator retains jurisdiction to decide the remedy) ("[I]nterlocutory review of nonfinal arbitration awards would defeat the purpose of 28 U.S.C. § 1291 (1982) to avoid piecemeal litigation of a claim."); see also Teamsters, Chauffers, Warehousemen, and Helpers and Professional, Clerical, Public and Miscellaneous Employees, Local Union No. 533 v. Keolis Transit America, Inc., No. 21-cv-00167 (CLB), 2021 WL 4097136 (D. Nev. Sep. 8, 2021) (finding that the arbitrator's award was not final and binding in part because it was ambiguous as to backpay and the Arbitrator had retained jurisdiction to decide the remedy if a dispute between the parties arose).

### B. Motion to Vacate and Motion to Dismiss

The Court otherwise finds that under both the FAA and Section 301 of the LMRA, the Court must confirm, rather than vacate, the Award. Keolis raises three arguments in chief: that the Arbitrator exceeded his powers under the CBA by issuing a decision that modifies the express terms Keolis policies and the parties' CBA; and that the Arbitrator violated the FAA when he refused to consider evidentiary material pertinent to the parties' dispute; that the Arbitrator's award was biased in favor of the Union.

The burden of proof in a proceeding to confirm or vacate an arbitration award rests with the party defending against enforcement of the award. U.S. Life Ins. Co. v. Superior Nat. Ins. Co., 591 F.3d 1167, 1173 (9th Cir. 2010). The Court finds that Keolis has not satisfied that burden as to each of its arguments, which are analyzed in turn. Keolis has not shown that the Arbitrator exceeded his powers. The Arbitrator weighed the evidence, read the relevant sections, and

concluded that Work Rule 4 conflicted with rather than expanded CBA Section 9.6. He noted that "it does not help Keolis' case that it sought to include language resembling Work Rule 4 in the CBA during the most recent round of contract negotiations. One has to wonder why an employer would seek to negotiate such a provision, and possibly fail at the bargaining table, if it already enjoyed the right in question." ECF No. 1 p. 37, n. 4.

Judicial scrutiny of an arbitrator's decision in a labor dispute "is extremely limited." Sheet Metal Workers Int'l Ass'n, Local No. 359 v. Arizona Mechanical & Stainless, Inc., 863 F.2d 647, 653 (9th Cir. 1988). This Court must defer to the arbitrator whenever she "arguably construing or applying the contract." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987). Here, the Arbitrator appears to go to great lengths to center the language of the CBA, and weighs the parties' factual allegations accordingly. Furthermore, the law requires deference to a labor arbitrator's decision even where a court believes that the decision finds the facts erroneously. Southwest Reg'l Council of Carpenters, 823 F.3d at 533 (9th Cir. 2016).

In reviewing an arbitration award, the district court does not "sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." S. Cal. Gas Co. v. Utility Workers Union of Am., Local 132, 265 F.3d 787, 792 (9th Cir. 2001) (internal quotations omitted). The court's role is to review the procedural soundness of the arbitration, not its substantive merit. Haw. Teamsters & Allied Workers Union, Local 996 v. United Parcel Serv., 241 F.3d 1177, 1181 (9th Cir. 2001). Keolis has not shown why, under these circumstances, this Arbitration award should be vacated under this extremely exacting standard.

Keolis argues that the Arbitrator refused to allow Keolis any discovery, inquiry, or even examination of witnesses regarding the reasonableness of Rowan's job search during his period of unemployment. Furthermore, the Arbitrator denied Keolis the opportunity to present evidence relevant to Rowan's duty to mitigate his damages (backpay). The Union responds that under the Arbitrator's order, the Company could have presented additional mitigation evidence in its possession. The Arbitrator's requirement that "no other documents are to be included" was in reference to a list of items for Rowan to include in his statement. The Arbitrator did not prohibit the Company from presenting relevant evidence, let alone pertinent and material evidence. Keolis

does not argue that it made a request to seek specific discovery that was denied, or that it took affirmative steps to introduce evidence already in its possession that was also denied.

At the hearing on the instant motions, Keolis did not state that it requested any discovery related to remedies during the general discovery period prior to the hearing before the Arbitrator that the Arbitrator denied. The Court agrees with the Union that by granting the Arbitrator jurisdiction over the remedy in the case, the parties granted the Arbitrator the power to determine the appropriate procedures for determining a remedy. The Arbitrator exercised those powers fairly here. Furthermore, Keolis does not point to language in the CBA that curtails or limits the Arbitrator's power to control post-hearing discovery, or any evidence that specific requests were granted or denied unfairly or prejudicially. See, e.g., Ferguson v. Countrywide Credit Indus., Inc., 298 F.3d 778, 787 (9th Cir. 2002) (concluding discovery provisions limiting the number of depositions to three "may afford [plaintiff] adequate discovery to vindicate her claims" when the arbitrator had discretion to allow for more depositions and expand discovery).

Keolis argues that the Arbitrator had a bias in favor of the Union traceable to his decade long tenure at the Union's counsel's law firm. "[A]n arbitrator's business relationships may be diverse indeed, involving more or less remote commercial connections with great numbers of people. He cannot be expected to provide the parties with his complete and unexpurgated business biography." Commonwealth Coatings Corp. v. Continental Casualty, 393 U.S. 145, 151-52 (1968). Instead, an arbitrator must disclose only those relationships that are substantial, and not "trivial." Id.; see also Schmitz v. Zilveti, 20 F.3d 1043, 1046 (9th Cir. 1994) ("[E]vident partiality is present when the undisclosed facts show a reasonable impression of partiality.") (internal citation and quotation marks omitted).

Keolis had the Arbitrator's resume before the parties began the striking process to select an Arbitrator. Keolis agreed on the Arbitrator knowing about his prior work at the Union's law firm. The Court does not find that the Arbitrator withheld important information about his connection to the Union's law firm. Additionally, outside of this allegation, Keolis does not raise relevant facts that challenge the Arbitrator's partiality.

/

### C. Attorneys' fees

The Court finds that attorney's fees are warranted in this case. In <u>Int'l Union of Petroleum and Industrial Workers v. Western Industrial Maintenance, Inc.</u>, 707 F.2d 425, 428 (9th Cir. 1983), the Ninth Circuit held that: "bad faith may be demonstrated by showing that a defendant's obstinacy in granting a plaintiff his clear rights necessitated resort to legal action with all the expense and delay entailed in litigation" and that "these considerations are particularly apt in the context of labor arbitration . . . [which] advances the goal of industrial stabilization." (internal citations and quotation marks omitted).

Other circuits have agreed that an award of fees is appropriate when a losing party to a labor arbitration refuses to comply. <u>United Food & Commercial Workers Union, Local 400 v. Marval Poultry Co.</u>, 876 F.2d 346, 351 (4th Cir. 1989) ("Because such challenges [to arbitration awards], if undeterred, inevitably thwart the national labor policy favoring arbitration, they must be considered presumptively unjustified."); <u>Production and Maintenance Employees' Local 504, Laborers' Intern. Union of N.A., AFL-CIO v. Roadmaster Corp.</u>, 916 F.2d 1161, 1163 (7th Cir. 1990) ("Anything less makes a mockery of arbitration's promise to expedite and cut the costs of resolving disputes.").

## VI.   CONCLUSION

IT IS THEREFORE ORDERED THAT Keolis' Motion (ECF No. 1) is DENIED, and Defendant's Motion to Confirm (ECF No. 12) is GRANTED.  This matter is DISMISSED, and the Arbitration Award is CONFIRMED.

IT IS FURTHER ORDERED that Defendant is given 30 days to file a Motion for an award of attorney's fees if it so chooses.  If no such motion is filed by April 26, 2023, the Clerk of Court is instructed to close this case.

DATED March 27, 2023.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**